# IN THE UNITED STATES DISTRICT COURT

## FOR THE DISTRICT OF NEW MEXICO

UNITED STATES OF AMERICA,

      Plaintiff,

vs.                                   No. CR 20-1948 JB

TIMOTHY ORTEGA,

      Defendant.

## MEMORANDUM OPINION AND ORDER

**THIS MATTER** comes before the Court on the Defendant's Sealed Objections to the Presentence Report, filed March 12, 2021 (Doc. 44)("Objections"). The Court scheduled a sentencing hearing for April 9, 2021. See Order Continuing Sentencing at 1, filed March 22, 2021, (Doc. 48). The primary issue is whether the Court should sustain Defendant Timothy Ortega's Objections to the United States Probation Office's 2-level increase under United States Sentencing Guidelines ("U.S.S.G") § 2D1.1(b)(1) for Ortega's violations of 21 U.S.C. §§ 841(a)(1) and (b)(1)(B), being in Possession with Intent to Distribute 50 Grams and More of Methamphetamine, and 18 U.S.C. § 922(g)(1) and § 924(a)(2), being a Felon in Possession of Ammunition, because Ortega "possessed a dangerous weapon, including a firearm," related to his offense, U.S.S.G. § 2D1.1(b)(1). Because the Court determines that (i) a straightforward reading of U.S.S.G. § 2D1.1(b)(1), U.S.S.G. § 2D1.1 application note 11, and U.S.S.G. § 1B1.1 application note 1(H), supports that a "BB"[1] or "pellet gun" is a dangerous weapon under U.S.S.G. § 2D1.1(b)(1); and

---

[1]"A BB gun is a type of air gun designed to shoot metallic ball projectiles called BBs (not to be confused with bearing balls), which are approximately the same size as BB-size lead birdshot (0.180 in or 4.6 mm in diameter)." BB Gun, Wikipedia, https://en.wikipedia.org/wiki/BB_gun (last visited April 9, 2021).

(ii) a BB or pellet gun was found in Ortega's residence during the agents' execution of a search warrant, the Court concludes that the USPO's application of the 2-level enhancement pursuant to U.S.S.G. § 2D1.1(b)(1), is not contrary to the United States Sentencing Guidelines.  The Court, therefore, overrules Ortega's Objection to the USPO's calculation of the Guidelines range.

## RELEVANT LAW REGARDING THE SENTENCING GUIDELINES

In United States v. Booker, 543 U.S. 220 (2005), the Supreme Court of the United States of America severed the mandatory provisions from the Sentencing Reform Act, Pub. L No. 98-473, 98 Stat. 1976, thus making the Guidelines sentencing ranges effectively advisory.  In excising the two sections, the Supreme Court left the remainder of the Sentencing Reform Act intact, including 18 U.S.C. § 3553: "Section 3553(a) remains in effect, and sets forth numerous factors that guide sentencing.  Those factors in turn will guide appellate courts, as they have in the past, in determining whether a sentence is unreasonable."  United States v. Booker, 543 U.S. at 261.

Congress has directed sentencing courts to impose a sentence "sufficient, but not greater than necessary," to comply with the four statutorily defined purposes that 18 U.S.C. § 3553(a)(2) enumerates:

> (A)     to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense;
>
> (B)      to afford adequate deterrence to criminal conduct;
>
> (C)     to protect the public from further crimes of the defendant; and
>
> (D)     to provide the defendant with needed educational or vocational training, medical care, or other correctional treatment in the most effective manner.

18 U.S.C. § 3553(a)(2).  See 18 U.S.C. § 3551 ("[A] defendant who has been found guilty of an offense described in any Federal statute . . .  shall be sentenced in accordance with the provisions of this chapter so as to achieve the purposes set forth in subparagraphs (A) through (D) of section

3553(a)(2) to the extent that they are applicable in light of all the circumstances of the case.").  To achieve these purposes, § 3553(a) directs sentencing courts to consider: (i) the Guidelines; (ii) the offense's nature, and the nature of the defendant's character; (iii) the available sentences; (iv) the policy favoring uniformity in sentences for defendants who commit similar crimes; (v) the need to provide restitution to victims; and (vi) any pertinent United States Sentencing Commission policy statements in effect on the date of sentencing.  See 18 U.S.C. § 3553(a)(1), (3)-(7).

Although the Guideline sentences are no longer mandatory, both the Supreme Court and the Tenth Circuit have clarified that, while the Guidelines are one of several factors which § 3553(a) enumerates, they are entitled to careful consideration.  See Rita v. United States, 551 U.S. 338, 349 (2007)("The Guidelines as written reflect the fact that the Sentencing Commission examined tens of thousands of sentences and worked with the help of many others in the law enforcement community over a long period of time in an effort to fulfill [its] statutory mandate."); United States v. Cage, 451 F.3d 585, 593 (10th Cir. 2006)(describing the Guidelines as more than "just one factor among many"), overruled on other grounds by Gall v. United States, 552 U.S. 35 (2007).  The Guidelines are significant, because "the Guidelines are an expression of popular political will about sentencing that is entitled to due consideration . . . [and] 'represent at this point eighteen years' worth of careful consideration of the proper sentence for federal offenses.'" United States v. Cage, 451 F.3d at 593 (quoting United States v. Terrell, 445 F.3d 1261, 1265 (10th Cir. 2006)), overruled on other grounds by Rita v. United States, 551 U.S. at 349).  A reasonable sentence is one that "avoid[s] unwarranted sentence disparities among defendants with similar records who have been found guilty of similar conduct."  18 U.S.C. § 3553(a)(6).  See United States v. Booker, 543 U.S. at 261-62.

The Tenth Circuit has "joined a number of other circuits in holding that a sentence within the applicable Guidelines range is presumptively reasonable." United States v. Terrell, 445 F.3d at 1264.  This presumption, however, is an appellate presumption, and not one that the trial court can or should apply.  See Kimbrough v. United States, 552 U.S. 85, 90-91 (2007); Gall v. United States, 552 U.S. at 46-47; Rita v. United States, 551 U.S. at 350-51 (repeating that the presumption of reasonableness "is an *appellate* court presumption")(emphasis in original); United States v. Conlan, 500 F.3d 1167, 1169-70 (10th Cir. 2007)(stating that "the government rightly concedes the district court erred in affording a presumption of reasonableness to the recommended advisory sentence," because "the guidelines are presumptively reasonable only at the appellate level"). Instead, the trial court must undertake the § 3553(a) balancing of factors without any presumption in favor of the advisory  Guidelines sentence.  See Kimbrough v. United States, 552 U.S. at 90-91; Gall v. United States, 552 U.S. at 46-47; Rita v. United States, 551 U.S. at 351.

While the Supreme Court's decision in United States v. Booker, 543 U.S. 220 (2005),  has given the sentencing court discretion that it did not have earlier, the sentencing court's first task remains to determine accurately and correctly the advisory-guideline sentence. Thus, before the sentencing court takes up a defendant's Booker arguments, the sentencing court must first determine whether the defendant is entitled to downward departures. The sentencing court may, however, also use these same departure factors in the Booker calculus, even if the court does not grant a downward departure.  See United States v. Apodaca-Leyva, No. CR 07-1479 JB, 2008 WL 2229550, at *6 (D.N.M. Feb. 13, 2008)(Browning, J.).  The Supreme Court has recognized, however, that sentencing judges are "'in a superior position to find facts and judge their import under § 3553(a)' in each particular case."  Kimbrough v. United States, 552 U.S. at

89 (quoting <u>Gall v. United States</u>, 552 U.S. at 51).  Accord <u>United States v. Lewis</u>, 398 F. Supp.

3d 945, 967 (D.N.M. 2019)(Browning, J.).

**LAW REGARDING THE BURDEN OF PROOF REQUIRED**
**FOR ENHANCEMENTS UNDER THE GUIDELINES**

In <u>Apprendi v. New Jersey</u>, 530 U.S. 466 (2000), the Supreme Court reaffirmed the

principle that it is permissible for sentencing judges "to exercise discretion -- taking into

consideration various factors relating both to offense and offender -- in imposing judgment within

the range prescribed by statute."  530 U.S. at 481.  The Supreme Court cautioned, however, that

the Constitution of the United States of America limits this discretion and that the Sixth

Amendment requires that, "[o]ther than the fact of a prior conviction, any fact that increases the

penalty for a crime beyond the prescribed statutory maximum must be submitted to a jury, and

proved beyond a reasonable doubt."  <u>Apprendi v. New Jersey</u>, 530 U.S. at 490.  In <u>Blakely v.

Washington</u>, 542 U.S. 296 (2004), the Supreme Court elaborated on its holding in <u>Apprendi v.

New Jersey</u>, stating that the "statutory maximum for <u>Apprendi</u> purposes is the maximum sentence

a judge may impose solely on the basis of the facts reflected in the jury verdict or admitted by the

defendant."   542 U.S. at 303 (emphasis omitted)(citations omitted)(internal quotation marks

omitted).   In <u>United States v. Booker</u>, the Supreme Court held that, because the sentencing

guidelines are no longer mandatory, "<u>Apprendi</u> does not apply to the present advisory-Guidelines

regime." <u>United States v. Ray</u>, 704 F.3d 1307, 1314 (10th Cir. 2013).  See <u>United States v.

Booker</u>, 543 U.S. at 259 ("[W]ithout this provision [of the Guidelines statute] -- namely, the

provision that makes the relevant sentencing rules mandatory and imposes binding requirements

on all sentencing judges -- the statute falls outside the scope of <u>Apprendi</u>'s requirement."

(alterations omitted)(internal quotations marks omitted)).  The Supreme Court has recently held

that the requirements in Apprendi v. New Jersey apply to facts that increase a defendant's mandatory minimum sentence.  Alleyne v. United States, 570 U.S. 99 (2013).

In United States v. Magallanez, 408 F.3d 672 (10th Cir. 2005), the Tenth Circuit held that Blakely v. Washington and United States v. Booker had not changed the district court's enhancement-findings analysis.  See United States v. Magallanez, 408 F.3d at 684-85.  United States v. Magallanez involved plain-error review of a drug sentence in which a jury found the defendant, Magallanez, guilty of conspiracy to possess with intent to distribute and to distribute methamphetamine.  See 408 F.3d at 676.  As part of its verdict, the jury, through a special interrogatory, attributed to the defendant 50 to 500 grams of methamphetamine; at sentencing, however, the judge -- based on testimony of the various amounts that government witnesses indicated they had sold to the defendant -- attributed 1200 grams of methamphetamine to the defendant and used that amount to increase his sentence under the Guidelines.  See United States v. Magallanez, 408 F.3d at 682.  The district court's findings increased the defendant's Guidelines sentencing range from 63 to 78 months to 121 to 151 months.   See United States v. Magallanez, 408 F.3d at 682-83.  The Tenth Circuit stated that, both before and after Congress' passage of the Sentencing Reform Act, "sentencing courts maintained the power to consider the broad context of a defendant's conduct, even when a court's view of the conduct conflicted with the jury's verdict."  United States v. Magallanez, 408 F.3d at 684.  Although United States v. Booker made the Guidelines "effectively advisory," the Tenth Circuit in United States v. Magallanez reaffirmed that "district courts are still required to consider Guideline ranges, which are determined through application of the preponderance standard, just as they were before."  408 F.3d at 685 (citation omitted).

The Tenth Circuit, while "recognizing 'strong arguments that relevant conduct causing a dramatic increase in sentence out to be subject to a higher standard of proof,' " has "long held that sentencing facts in the 'ordinary case' need only be proven by a preponderance." United States v. Olsen, 519 F.3d 1096, 1105 (10th Cir. 2008)(quoting United States v. Washington, 11 F.3d 1510, 1516 (10th Cir. 1993)). "[T]he application of an enhancement . . . does not implicate the Supreme Court's holding in Apprendi v. New Jersey." United States v. Reyes-Vencomo, No. CR 11–2563 JB, 2012 WL 2574810, at *3 (D.N.M. June 26, 2012)(Browning, J.). The Tenth Circuit applies Apprendi v. New Jersey's requirement that a fact be submitted to a jury only where the fact would increase a defendant's sentence "above the statutory maximum permitted by the statute of conviction." United States v. Price, 400 F.3d 844, 847 (10th Cir. 2005). Accord United States v. Ray, 704 F.3d at 1314. A defendant may only assert an error under Apprendi v. New Jersey where the fact at issue increased his sentence beyond the statutory maximum. See United States v. O'Flanagan, 339 F.3d 1229, 1232 (10th Cir. 2003)(holding that a defendant could not assert an error under Apprendi v. New Jersey because "his sentence does not exceed the statutory maximum"); United States v. Hendrickson, No. 12-5016, 2014 WL 6679446, at *6 (10th Cir. Nov. 25, 2014)(unpublished)6(holding that, after Alleyne v. United States, "[i]t is well-established that sentencing factors need not be charged in an indictment and need only be proved to the sentencing judge by a preponderance of the evidence"). As the Court has noted:

> The Court explained that, although the decision of the Supreme Court of the United States in Alleyne v. United States, 570 U.S. 99, expands the rule from Apprendi v. New Jersey, 530 U.S. 466 (2000)(holding that facts that increase the maximum sentence a defendant faces must be proven to a jury beyond a reasonable doubt), to cover facts that increase the mandatory minimum sentence, as well as the maximum sentence, it does not prohibit district judges from continuing to find advisory sentencing factors by a preponderance of the evidence. See [United States v. Sangiovanni, No. CR 10–3239 JB,] 2014 WL 4347131, at *22-26 [ (D.N.M. Aug. 29, 2014)(Browning, J.) ].

<u>United States v. Cervantes–Chavez</u>, No. CR 14–0259 JB, 2014 WL 6065657, at *14 (D.N.M. Nov. 3, 2014)(Browning, J.).

<u>**ANALYSIS**</u>

The Court will overrule Ortega's Objection to the USPO's application of a two-level enhancement, pursuant to U.S.S.G. § 2D1.1, because (i) a straightforward reading of U.S.S.G. § 2D1.1(b)(1), U.S.S.G. § 2D1.1 application note 11, and U.S.S.G. § 1B1.1 application note 1(H) supports that a BB gun or pellet gun is a "dangerous weapon" under U.S.S.G. **§** 2D1.1(b)(1); and (ii) a BB gun or pellet gun was found in Ortega's residence during the agents' execution of the search warrant, <u>see</u> Presentence Investigation Report, ¶ 12, at 5, filed December 14, 2020 (Doc. 39)("PSR"). The USPO added a 2-level enhancement, pursuant to U.S.S.G. § 2D1.1, based on Ortega's possession of a dangerous weapon. <u>See</u> PSR ¶ 21, at 7. Ortega argues that the 2-level enhancement should not apply, because "the firearm located in his hallway bathroom," which agents found while conducting the search warrant of his residence, "did not belong to him but had been brought into the house by his guest, Christopher Armijo, who was present when the search of Mr. Ortega's home occurred." Objections at 1-2. Relatedly, Ortega argues that, although the agents found "ammunition of various calibers in Mr. Ortega's personal bedroom," and "Mr. Ortega has admitted that he possessed the ammunition located in his bedroom," he was not aware of the firearm that the agents' located in his residence, and therefore, the two-level enhancement was improper. Objections at 2-3.

Under U.S.S.G. § 2D1.1(b)(1), "[i]f a dangerous weapon (including a firearm) was possessed" by the defendant, a court should increase the sentence by "**2** levels." U.S.S.G. § 2D1.1(b)(1) (emphasis in original). Section 2D1.1's application note 11, states:

> Application of Subsection (b)(1): Definitions of "firearm" and "dangerous weapon" are found in the Commentary to §1B1.1 (Application Instructions). The enhancement for weapon possession in subsection (b)(1) reflects the increased

- 8 -

danger of violence when drug traffickers possess weapons. The enhancement should be applied if the weapon was present, unless it is clearly improbable that the weapon was connected with the offense.  For example, the enhancement would not be applied if the defendant, arrested at the defendant's residence, had an unloaded hunting rifle in the closet. The enhancement also applies to offenses that are referenced to §2D1.1; see §§ 2D1.2(a)(1) and (2), 2D1.5(a)(1), 2D1.6, 2D1.7(b)(1), 2D1.8, 2D1.11(c)(1), and 2D1.12(c)(1).

U.S.S.G. § 2D1.1, application note 11.  Section 1B1.1. application note 1(H), in turn, states that "[a] weapon, commonly known as a 'BB' or pellet gun that uses air or carbon dioxide pressure to expel a projectile is a dangerous weapon . . ."  U.S.S.G. § 2D1.1, application note 1(H).

Here, the agents found a weapon, as well as ammunition, throughout Ortega's property during execution of the search warrant, including:

- Colt MK4 Series 80 .45 caliber 1911 style handgun, serial number FG42913 (stolen) with loaded magazine inserted in the firearm

- A partially loaded magazine

- Various caliber ammunition located throughout the residence.

PSR ¶ 12, at 5.  The PSR also states that, although "Ortega and another adult male (identified as Christopher Armijo) were located inside the home . . . Ortega was the only resident of the home." PSR ¶ 12, at 5.   U.S.S.G. § 2D1.1(b)(1), U.S.S.G. § 2D1.1 application note 11, and USSG § 1B1.1. application note 1(H), explicitly define  a "BB" or "pellet gun" as a dangerous weapon under U.S.S.G. § 2D1.1(b)(1).  In addition, because (i) the weapons were "present" in Ortega's residence -- which, he alone occupied, U.S.S.G. § 2D1.1, application note 11; and (ii) Ortega presents no evidence to demonstrate that it is "clearly improbable that the weapon was connected with" Ortega's offense, U.S.S.G. § 2D1.1, application note 11, even if the firearm "was found in a hallway bathroom on top of the vanity and was not clearly visible to anyone entering the bathroom," Objections at 2, the Court concludes that the USPO properly applied the 2-level sentencing enhancement under U.S.S.G. § 2D1.1(b)(1)

**IT IS ORDERED** that the Defendant's Objection to the PSR's application of a two-level

enhancement under U.S.S.G. § 2D1.1(b)(1) is overruled.


_____
UNITED STATES DISTRICT JUDGE

*Counsel:*

Fred J. Federici III
   Acting United States Attorney
Robert I. Goldaris
   Assistant United States Attorney
United States Attorney's Office
Albuquerque, New Mexico

   *Attorneys for the Plaintiff*


Alonzo J. Padilla
   Assistant Federal Public Defender
Federal Public Defender's Office
Albuquerque, New Mexico

   *Attorney for the Defendant*